

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA

v.

NO.  2:24-cr-00038-Z-BR

AMY DIXON

## FACTUAL RESUME

In support of the plea of guilty by Amy Dixon to the offense in Count One of the

Information, Dixon, the defendant, Slater Elza, the defendant's attorney, and the United

States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information, charging a violation

of 18 U.S.C. § 371, that is, Conspiracy to Embezzle from a Federally Funded Program,

the government must prove each of the following elements beyond a reasonable doubt:

Conspiracy to Embezzle from a Federally Funded Program[1]

*First.*    That the defendant and at least one other person agreed to embezzle
from a federally funded program, as charged in the Information;

*Second.*   That the defendant knew the unlawful purpose of the agreement and
joined in it willfully, that is, with the intent to further the unlawful
purpose; and

*Third.*    That at least one of the conspirators during the existence of the
conspiracy knowingly committed at least one of the overt acts
described in the Information, in order to accomplish some object or
purpose of the conspiracy.

---

[1]Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019 ed.).

**Amy Dixon**
**Factual Resume—Page 1**

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member of the conspiracy becomes the agent of every other member.

The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

### Embezzlement from a Federally Funded Program[2]

*First.*      That the defendant was an agent of the City of Amarillo;

*Second.*   That the City of Amarillo was an organization or government that

---

[2] Fifth Circuit Pattern Jury Instruction 2.33A (5th Cir. 2019 ed.).

received in any one-year period benefits in excess of $10,000 under a Federal program involving subsidies;

*Third.*   That the defendant stole, embezzled, or obtained by fraud property that was owned by, or under the care, custody, or control of, the City of Amarillo; and

*Fourth.*   That the property had a value of $5,000 or more.

The term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization, or government, includes a servant or employee, and a partner, director, officer, manager, and representative.

The term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program.

The term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

The term "in any one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

To "embezzle" means to wrongfully, intentionally take money or property of another after the money or property has lawfully come within the possession or control of the person taking it.  No particular type of moving or carrying away is required.

To "steal" or "convert" means to wrongfully take money or property belonging to another with intent to deprive the owner of its use and benefit either temporarily or permanently. Any appreciable change of the location of the property with the intent to deprive constitutes a stealing whether or not there is an actual removal of it from the owner's premises.

**Amy Dixon**
**Factual Resume—Page 3**

To "obtain by fraud" means to act knowingly and with intent to deceive or cheat, usually for the purpose of causing financial loss to someone else or bringing about a financial gain to oneself or another.

To "intentionally misapply" money or property means to intentionally convert such money or property for one's own use and benefit, or for the use and benefit of another, knowing that one had no right to do so.

The word "value" means the face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

It is not necessary to prove that the defendant's conduct directly affected the funds received by the agency under the Federal program. However, there must be some connection between the criminal conduct and the organization or agency of State government receiving federal assistance.

In determining whether the defendant is guilty of this offense, do not consider bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

## STIPULATED FACTS

1.      Amy Dixon admits and agrees that, at all times relevant to this factual resume, she was an agent of the City of Amarillo, and that the City of Amarillo received benefits in excess of $10,000 in a one-year period in subsidies from the United States Department of Housing and Urban Development (HUD).  Dixon further admits and agrees that beginning from as early as September 2020, and continuing until in or around April 2023, in the Amarillo Division of the Northern District of Texas, and elsewhere, she did knowingly and willfully combine, conspire, confederate, or agree with persons known or unknown to the United States to knowingly steal, embezzle, or obtain by fraud, property having an aggregate value of $5,000 or more, which was owned by, or under the

care, custody, or control of, the City of Amarillo, in violation of Title 18, United States Code, Section 666(a)(1)(A).

2.      Amy Dixon was employed by the City of Amarillo from 2012 until December 2023. Dixon worked in the Community Development Department as the Homeless Management Information Specialist. As its Homeless Management Information Specialist, Dixon was an agent of the City of Amarillo. Dixon was responsible for distributing HUD funds through the Emergency Solutions Grant (ESG) Program. This program provided funding for homeless or near-homeless citizens in Amarillo, Texas to assist with housing costs.

3.      The City of Amarillo was an organization or government that, in each of the one-year periods from January 1, 2020, through December 31, 2023, received federal grants and benefits well in excess of $10,000 through HUD subsidies.

4.      Dixon, on behalf of the City of Amarillo, would communicate with local property owners in Amarillo who were willing to lease their properties to people through the City's programs. The City of Amarillo would pay the landlord a market-rate rental fee in exchange for housing persons that needed assistance. Dixon also assisted in completing the lease agreements between the landlords and the lessee. After a property was selected, the Community Development Department's in-house Inspection team would perform a physical inspection to ensure that the living standards required by HUD were met. Dixon was responsible for coordinating these inspections and ensuring the properties passed inspection. Dixon would assemble the collected information into a Payment Voucher package. The Payment Vouchers were then sent to the City of

Amarillo's Finance Department, who would issue payments to landlords by direct deposit or checks.

5.      Beginning in September 2020, Dixon began completing fraudulent Payment Voucher packages to embezzle funds from the City of Amarillo and put the proceeds into her personal bank accounts. Dixon used a relative's identity to create a fictitious landlord to receive funds through the ESG Program. Dixon would then provide instructions to the Finance Department to call her when the checks were ready. Dixon would then pick up the checks from the Finance Department that were written out to her relative, a fictious landlord, and she would then go sign relative's name and deposit the checks into her personal bank accounts. In April 2021, the HUD issued a notice to all ESG program recipients that, due to COVID, recipients of ESG funds were allowed to accept property inspections conducted by other providers, instead of having to conduct their own inspections. This allowed Dixon to process payments for fictious properties, claiming her relative to be the owner of those fictitious properties.

6.      Dixon continued this process and fraudulent activity until she was moved to the Finance Department in April 2023. The City of Amarillo then noticed discrepancies in the ESG funds and an internal audit was later conducted to determine the loss amount.

7.      From September 2020 through April 2023, Dixon created approximately 223 fraudulent Payment Vouchers, resulting in 66 checks written to a fictitious landlord, including her relative, for a total loss amount of approximately $465,511.65. Dixon admits that she embezzled these funds, which were owned by, or under the care, custody, or control of, the City of Amarillo.

8.    Dixon admits that she was an agent of City of Amarillo.  Dixon admits that the City of Amarillo was an organization or agency of State government that received in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. Dixon admits that she embezzled, stole, obtained by fraud, knowingly converted to her own use, or intentionally misapplied property that was owned by or under the care, custody, or control of the City of Amarillo.  Dixon admits that the aggregate value of the property was $5,000 or more.

9.    Dixon admits that she learned how to prepare the fraudulent payment vouchers from Co-Conspirator 1, another former employee who participated in a similar scheme.  Dixon and Co-Conspirator 1 agreed to embezzle from a federally funded program, as described in the preceding paragraph.  Dixon admits that she knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.  Dixon admits that during the existence of the conspiracy she knowingly committed at least one of the overt acts described in the Information, in order to accomplish some object or purpose of the conspiracy.

10.    The defendant agrees that the defendant committed all the essential elements of the offense(s).  This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case.  The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this _3/⁴_ day of _May_, 2024.

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
Amy Dixon
Defendant

_____
JOSHUA FRAUSTO
Assistant United States Attorney
Attorney-in-Charge
Texas State Bar Number 24074228
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Telephone:    806-324-2356
Facsimile:     806-324-2399
E-mail:         joshua.frausto@usdoj.gov

_____
Slater Elza
Attorney for Defendant